IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Progressive Mountain Insurance
Company,

                Plaintiff,

v.

Judith Kaufman, Individually and
as Administrator of the Estate of
Sallie Kaufman; Tilly Mill Assisted
Living, LLC d/b/a Summer's
Landing Tilly Mill; Saint Simons
Health Care, LLC; and Sharon
Youngblood,

                Defendants.

_____/

Case No. 1:19-cv-01702

Michael L. Brown
United States District Judge

## **OPINION & ORDER**

This insurance coverage dispute arises out of a wheelchair accident involving Defendants Tilly Mill Assisted Living, LLC, Saint Simons Health Care, LLC, Sharon Youngblood (together, "Tilly Mill Defendants"), and Judith Kaufman (Individually and as Administrator of the Estate of Sallie Kaufman). Defendant Kaufman sued Tilly Mill Defendants in state court for negligently causing the accident. Plaintiff

Progressive Mountain Insurance Company then brought this declaratory action, claiming it is not required to provide coverage or a defense to Tilly Mill Defendants for the state court lawsuit. Plaintiff and Tilly Mill Defendants now cross-move for summary judgment. (Dkts. 35; 42.) The Court grants Plaintiff's motion and denies Tilly Mill Defendants' motion.

I.  **Background**

   A.  **The Accident**

Defendant Tilly Mill operates a personal care home called Summer's Landing. (Dkt. 35-3 ¶ 1.) Defendant Youngblood works there. (*Id.* ¶ 3.) On February 14, 2016, Defendant Youngblood drove several Summer's Landing residents, including Sallie Kaufman ("Sallie"), to church in a passenger van. (*Id.* ¶¶ 2, 7.) Defendant Youngblood parked the van in the church parking lot. (*Id.* ¶ 10.) Sallie was confined to a wheelchair. (*Id.* ¶ 8.) The van had a wheelchair lift, which allowed her to enter and exit the vehicle. (Dkt. 47 ¶ 6.)

When church services concluded, a church volunteer wheeled Sallie back to the van. (Dkt. 35-3 ¶¶ 9, 11.) She could not board immediately because other residents were being strapped into the vehicle or were otherwise ahead of her in the boarding process. (*Id.* ¶¶ 10–11; Dkts. 37

at 23–25; 38 at 30–34.)  As she waited, the volunteer wheeled her into a sunny area behind the van to keep her warm.  (Dkts. 35-3 ¶ 14; 47 ¶ 15.) No one told the volunteer to do this.  (Dkt. 35-3 ¶ 15.)  The volunteer left Sallie there without securing the brakes on her wheelchair.  (*Id.* ¶ 16.) Because the brakes were not secure, Sallie's wheelchair rolled across the parking lot and struck a curb.  (*Id.* ¶ 17.)  She fell out of the wheelchair and sustained injuries as a result.  (*Id.* ¶¶ 17, 19.)

### B. The Insurance Policy

At the time of the accident, the van was insured under a Commercial Auto policy ("Policy") issued by Plaintiff to Defendant Saint Simons.  (*Id.* ¶¶ 4–6; 42-1 ¶ 22.)  The Policy includes the following coverage:

### PART I – LIABILITY TO OTHERS

**Insuring Agreement – Liability to Others**

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense**, for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. . . .

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I.

(Dkt. 1-1 at 12.) The Policy also includes a notice provision, which states: "A person seeking coverage must . . . promptly call **us** to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to any claim or lawsuit." (*Id.* at 7.) The Policy is clear that Plaintiff "may not be sued unless there is full compliance with all the terms of this policy." (*Id.* at 29.)

### C. The State Court Lawsuit

On December 22, 2017, Defendant Kaufman filed a state court action against Tilly Mill Defendants for negligently causing Sallie's wheelchair accident. (Dkts. 1-2; 35-3 ¶ 19.) Defendant Youngblood was served on January 12, 2018, and filed an answer on February 9, 2018. (Dkt. 35-3 ¶¶ 20, 22.) Defendants Tilly Mill and Saint Simons filed an answer by special appearance on February 9, 2018, and filed an acknowledgment of service a few weeks later. (*Id.* ¶¶ 22, 24.) Tilly Mill Defendants did not tell Plaintiff about the lawsuit until July 19, 2018. (*Id.* ¶ 26.) Plaintiff was unaware of the case until then. (*Id.* ¶ 27.)

### D. Procedural History

Plaintiff filed this federal action in April 2019, seeking a declaration that Plaintiff "is not obligated to provide coverage, indemnity, or a

4

defense to [Tilly Mill Defendants] under [the Policy] for the claims asserted by [Defendant] Kaufman arising out of the February 14, 2016 incident." (Dkt. 1 at 16.) Plaintiff says this declaration is warranted because (1) Tilly Mill Defendants failed to provide Plaintiff with "prompt" notice of Defendant Kaufman's lawsuit in violation of the Policy's notice requirement (Count 1); and (2) Sallie's wheelchair accident did not "arise out of the ownership, maintenance or use" of the insured van and thus falls outside the scope of the Policy (Count 2). (Dkt. 1 at 12–14.) In early 2020, the parties filed cross-motions for summary judgment on both claims. (Dkts. 35; 42.)[1]

## II. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if "it might affect the outcome of the suit under the governing law." *W. Grp. Nurseries, Inc. v. Ergas*, 167 F.3d 1354, 1360 (11th Cir. 1999).

---

[1] The complaint also asserts a third ground for Plaintiff's requested relief (Count 3) but the parties do not clearly seek summary judgment on that ground and it is irrelevant to this Order. (Dkt. 1 at 14–15.)

A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 1361.

The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A moving party meets this burden by "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The movant, however, need not negate the other party's case. *Id.* at 323.

Once the movant has adequately supported its motion, the nonmoving party then has the burden of showing that summary judgment is improper by coming forward with "specific facts" showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, there is no "genuine issue for trial" when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48.

Throughout its analysis, the court must "resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his or her favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). "It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

### III. Discussion

#### A. The Policy's Notice Requirement (Count 1)

Count 1 claims the Policy provides no coverage for the state court lawsuit because Tilly Mill Defendants failed to promptly tell Plaintiff about the lawsuit in violation of the Policy's notice requirement. "Under Georgia law, notice provisions expressly made conditions precedent to coverage are valid and must be complied with unless there is a showing of justification." *OneBeacon Am. Ins. Co. v. Catholic Diocese of Savannah*, 477 F. App'x 665, 670 (11th Cir. 2012). In other words, "when an insurance policy includes a notice requirement as a condition

precedent to coverage, and when the insured unreasonably fails to timely comply with the notice requirement, the insurer is not obligated to provide a defense or coverage." *Forshee v. Employers Mut. Cas. Co.*, 711 S.E.2d 28, 31 (Ga. Ct. App. 2011). "Issues about the adequacy of notice or the merit of an insured's alleged justification are generally ones of fact, but in a particular case a court may rule on them as a matter of law." *Catholic Diocese of Savannah*, 477 F. App'x at 671. "The insured has the burden of showing justification for a delay in providing notice." *Id.* at 670.

### 1. Whether the Notice Requirement is a Condition Precedent

The Policy here includes the following notice provision: "A person seeking coverage must . . . promptly call **us** to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to any claim or lawsuit." (Dkt. 1-1 at 7.) This requirement is a condition precedent to coverage because the Policy says Plaintiff "may not be sued unless there is full compliance with all the terms of this policy." (*Id.* at 29); *see Progressive Mountain Ins. Co.. v. Bishop.*, 790 S.E.2d 91, 94 (Ga. Ct. App. 2016) (a "notice provision . . . creates a condition precedent to coverage" if the policy states "[w]e may not be sued unless there is full compliance

8

with all the terms of this policy"); *Lankford v. State Farm Mut. Auto. Ins. Co.*, 703 S.E.2d 436, 438–39 (Ga. Ct. App. 2010) (policy "required notice as a condition precedent to recovery of insurance benefits" where it said "there is no right of action against [the insurer] until all the terms of this policy have been met"). Tilly Mill Defendants must therefore "show that [they] complied with the notice provision or demonstrate justification for failing to do so." *Bishop*, 790 S.E.2d at 95.

### 2. Whether Tilly Mill Defendants Complied with the Notice Requirement

No reasonable jury could find that Tilly Mill Defendants complied with the notice provision here. The Policy required "prompt[]" notice of the state court lawsuit. "Georgia precedent shows that 'prompt' has the same meaning as terms like 'as soon as practicable' and 'immediate.'" *State Farm Fire & Cas. Co. v. LeBlanc*, 494 F. App'x 17, 22 (11th Cir. 2012). When used as an adjective, "prompt" also "denotes responding instantly or immediately." *Id.* The notice here cannot be described as any of these things. It is undisputed that Till Mill Defendants did not tell Plaintiff about the underlying lawsuit until July 19, 2018. That was almost seven months after the suit was filed, more than six months after Defendant Youngblood was served with the complaint, and more than

five months after Tilly Mill Defendants filed answers to the complaint. (Dkt. 35-3 ¶ 28.) "Courts applying Georgia law have held delays of four months to one year preclude recovery as a matter of law." *Johnson Landscapes, Inc. v. FCCI Ins. Co.*, 2015 WL 10891934, at *9 (N.D. Ga. Feb. 13, 2015); *see 105 R.R. St., LLC v. Great Lakes Reinsurance (UK) SE*, 2016 WL 9454412, at *3 (N.D. Ga. Dec. 21, 2016) ("Courts applying Georgia law hold that unexcused delays as short as three months preclude recovery as a matter of law."). The delay here falls well within that range.

Tilly Mill Defendants cite a $1 million "demand letter" that Defendant Kaufman sent Plaintiff and two other insurance companies for potential claims arising out of Sallie's wheelchair accident. But that letter was sent almost three months *before* the underlying lawsuit was filed, did not include any litigation papers, and expressly sought to "resolve th[e] matter" to *avoid* a lawsuit. (Dkt. 44-1 at 133–137.) Under these circumstances, no reasonable juror could say the letter notified Plaintiff of Defendant Kaufman's lawsuit.

### 3. Whether Tilly Mill Defendants' Noncompliance was Justified

Tilly Mill Defendants have also failed to establish a reasonable justification for their noncompliance with the notice provision. They say their untimely notice is "excused" because (1) Plaintiff "denied coverage" in an October 2017 letter and (2) this "induced the parties to think there was no coverage, and that contacting [Plaintiff] would be futile." (Dkt. 40 at 2, 9, 14.) No reasonable jury could agree.

Plaintiff sent the October 2017 letter in response to Defendant Kaufman's $1 million demand. (Dkt. 51-1 at 140.) The letter did not deny coverage. It simply said that, "[b]ased upon the information" of which Plaintiff was aware, Plaintiff was "unable to accept [the $1 million] demand *at this time*." (*Id.* (emphasis added).) The letter explained that "the alleged liability of Saint Simon, LLC is *doubtful*," that "there is a real *question* as to whether this claim would even be covered under [Plaintiff's] policy," and that Plaintiff was "unaware of whether Saint Simon, LLC is insured under a commercial general liability policy issued by another insurance company." (*Id.* (emphasis added).) The letter also noted that Defendant Kaufman sent her $1 million demand to several insurance companies and that Plaintiff was "unable to respond with any

11

offer at this time because" it was "unclear what portion of the demand you are making against [Plaintiff]." (*Id.*)  The letter requested specific additional information "[i]f you are making a full demand upon [Plaintiff]." (*Id.*)  Plaintiff ended the letter by reiterating its openness to further dialogue: "If there is additional information you would like us to consider, please feel free to pass it along to [us].  In the meantime, we are unable to respond to your demand any further at this time." (*Id.*)

In sum, the letter reasonably explained that Plaintiff could not immediately agree to comply with Defendant Kaufman's demand because (1) it was unclear what that demand even was, (2) Plaintiff needed more information, (3) the parties involved might have other insurance, and (4) it was unclear whether the Policy covered the accident.  The letter did not deny a claim for coverage.  And it certainly did not give Defendants license to ignore the Policy's notice requirement or any other condition precedent to coverage.  If anything, the letter sought to engage with the parties further. Indeed, Plaintiff's claims specialist (who wrote the letter) testified that he never denied coverage before the lawsuit and that he requested additional information from Defendants both before and after the letter was sent. (Dkt. 39 at 10, 22–34.)  He also engaged counsel to

12

investigate the claim before suit was filed. (*Id.* at 29, 35.) He testified that "everyone was aware" of counsel's involvement. (*Id.* at 29.) Given the undisputed facts here, no reasonable jury could find that Tilly Mill Defendants justifiably failed to comply with the Policy's notice requirement.[2]

Tilly Mill Defendants counter that Plaintiff was not prejudiced by their noncompliance with the notice requirement. But this argument does not cure their otherwise unreasonable failure to provide timely notice. For one thing, it is unclear whether Plaintiff really suffered no prejudice. Plaintiff says "there was less than one month left in the six month discovery period at the time [it] was first notified of the lawsuit." (Dkt. 45 at 18.) This could reasonably be viewed as prejudicial because it "deprived [Plaintiff] of the right to provide and to control the defense

---

[2] Tilly Mill Defendants' reliance on *Cont'l Cas. Co. v. Parker*, 288 S.E.2d 776 (Ga. Ct. App. 1982), is unavailing. In that case, the insured "orally notified his insurance agent within a few days of service of the complaint and was told at that time that [his company] and he were not covered for such an incident." *Id.* at 779. Under those facts, the court declined to "say that [a less-than-three-month] delay in giving written notice [and forwarding lawsuit papers] to the insurer was unreasonable as a matter of law." *Id.* Our case is distinguishable because Plaintiff never denied coverage and Defendants did not provide Plaintiff with any notice of the lawsuit until almost seven months after it was filed.

13

of the case" during a substantial and critical portion of the litigation, including "investigation of the claim, selection of counsel, theories of defense, conduct of discovery, and [preliminary] trial strategy." *Se. Exp. Sys., Inc. v. S. Guar. Ins. Co. of Georgia*, 482 S.E.2d 433, 436 (Ga. Ct. App. 1997) (finding the insurer's "rights were clearly prejudiced by the lack of notice as a matter of law").

But even if Plaintiff was not prejudiced, "Georgia law is clear . . . that an insurance company does not need to show prejudice to bar coverage due to untimely notification." *Catholic Diocese of Savannah*, 477 F. App'x at 672; *see Plantation Pipe Line Co. v. Stonewall Ins. Co.*, 780 S.E.2d 501, 510 (Ga. Ct. App. 2015) ("[W]hen specified notice is a valid condition precedent to coverage, an insurer is not required to show actual harm from a delay in notice in order to justify a denial of coverage based on such failure of a condition precedent."); *S. Guar. Ins.*, 482 S.E.2d at 436 ("[C]ontrary to appellants' contentions, appellee was not required to show it was prejudiced by appellants' failure to give notice, as the notice requirement was a condition precedent under the policy."). The rule instead is this: "[A]n insured that cannot demonstrate justification for failure to comply with a notice provision that is expressly made a

14

condition precedent to coverage is not entitled to either a defense or coverage, even if the insurer does not show actual harm from a delay in notice." *Bishop.*, 790 S.E.2d at 94. That rule applies here and precludes coverage under the Policy for the state court claims. As a result, Plaintiff is entitled to summary judgment on Count 1.[3]

## B.     The Accident's Connection to the Van (Count 2)

Count 2 claims the state court lawsuit falls outside the Policy because Sallie's accident did not "aris[e] out of the ownership, maintenance or use of" the insured van. The Court agrees.

---

[3] Some Georgia courts have said that, while an insurer "is not required to show prejudice resulting from an alleged failure to [provide timely notice], the insurer's failure to demonstrate prejudice *may* be considered." *JNJ Found. Specialists, Inc. v. D.R. Horton, Inc.*, 717 S.E.2d 219, 226 (Ga. Ct. App. 2011) (emphasis altered). Other courts have disagreed. *See, e.g.*, *Bituminous Cas. Corp. v. J. B. Forrest & Sons, Inc.*, 209 S.E.2d 6, 10 (Ga. Ct. App. 1974) ("The trial court need not find *nor should it consider*, the prejudice to the insurer, if any, that may have resulted from the insure[d]'s delay." (emphasis added)). And, applying Georgia law, the Eleventh Circuit has held that a district court does not "err[] in failing to consider whether [the insurer] was prejudiced by [its insured's] delay in giving notice." *State Farm Fire & Cas. Co. v. LeBlanc*, 494 F. App'x 17, 21–22 (11th Cir. 2012). Even considering Plaintiff's prejudice here, the Court's conclusion remains unchanged: the Policy's notice provision still precludes coverage for the underlying lawsuit.

15

"In the automobile insurance context, the phrase 'arising out of' has been interpreted broadly to encompass situations where the injury originated from, had its origin in, grew out of, or flowed from the use of the vehicle." *Kinzy v. Farmers Ins. Exch.*, 667 S.E.2d 673, 674 (Ga. Ct. App. 2008). "But this broad interpretation does not extend the contract language to something distinctly remote." *Id.* Indeed, "[t]o hold that coverage for injuries *arising out of* the operation, maintenance, or use of an insured vehicle extends to injuries suffered whenever the vehicle is involved in any way would be contrary to the original intent of the contracting parties." *USAA Prop. & Cas. Ins. Co. v. Wilbur*, 427 S.E.2d 49, 52 (Ga. Ct. App. 1993). Ultimately, while "proximate cause in the strict legal sense" is not required, there must still be a legally sufficient "causal connection between the use of the vehicle and the injury sustained." *D.R. Horton*, 717 S.E.2d at 222; *Kinzy*, 667 S.E.2d at 674–75.

The only causal connection between the van and Sallie's injury is that she was placed somewhere that ultimately led to her injury partly because she was waiting to board the van. That connection is too attenuated. In *Boykin v. State Farm Mut. Auto. Ins. Co.*, 393 S.E.2d 470 (Ga. Ct. App. 1990), the insured drove to a combination service station

16

and convenience store. *Id.* at 471. She went into the store while her car was being filled with gasoline. *Id.* She bought food, paid for the gasoline, exited the store, and began walking back to the car. *Id.* When she was about two feet away from the car, she reached out to open the driver's door but slipped and fell before she could do so. *Id.* The court held that "her injuries did not arise out of the operation, maintenance or use of the automobile" because "there was at most a remote connection between [her] injuries and the vehicle." *Id.* at 471.[4]

As in *Boykin*, (1) Sallie assumed a position near the insured vehicle, (2) she did so partly because she was about to enter the vehicle, and (3) she was injured by an independent cause while she was in this position. Sallie's injury is even more remote than the insured in *Boykin*

---

[4] *See also State Farm Mut. Auto. Ins. Co. v. Myers*, 728 S.E.2d 787, 789 (Ga. Ct. App. 2012 ) ("[T]he car in this case was only tangentially connected to D.M.'s injuries as the situs of the attack, and [thus] we find that the damages to D.M. alleged in the underlying suit did not result from the use of the car."); *Kinzy*, 667 S.E.2d at 674–75 (plaintiff's "injuries were too remote from [the insured's] vehicle use, ownership, or maintenance to fall within the [policy]" even though (1) the insured punched and injured plaintiff while standing next to the vehicle, (2) the insured exited the vehicle only moments earlier in order to confront plaintiff, and (3) the insured's "vehicle use undoubtedly sparked" the assault).

17

because she was not immediately in the process of boarding the vehicle when the accident happened. And she was placed where she was, not to facilitate her entry into the vehicle, but to keep her warm while she waited. She was also placed there unilaterally by someone who had no connection to the vehicle (beyond voluntarily helping residents move from the church to the vehicle). Given these facts, and Georgia's caselaw in this area, no reasonable jury could find that Sallie's wheelchair accident arose out of the ownership, maintenance, or use of the insured van. As a result, Defendants are not entitled to coverage for the state court lawsuit and Plaintiff is entitled to summary judgment on Count 2.

### C.     Conclusion

Plaintiff is entitled to the declaration it seeks, namely, that Plaintiff "is not obligated to provide coverage, indemnity, or a defense to [Tilly Mill Defendants] under [the Policy] for the claims asserted by [Defendant] Kaufman arising out of the February 14, 2016 incident." (Dkts. 1 at 16; 35-1 at 21.) Plaintiff is entitled to this declaration under Count 1 or alternatively Count 2; each count, standing alone, entitles Plaintiff to the relief it seeks. Because Count 3 also seeks the same relief, and because

18

the parties have not clearly moved for summary judgment on that count, it is hereby dismissed as moot.

## IV. Conclusion

The Court **GRANTS** the Motion for Summary Judgment (Dkt. 35) filed by Plaintiff Progressive Mountain Insurance Company. The Court **DENIES** the Motion for Summary Judgment (Dkt. 42) filed by Defendants Tilly Mill Assisted Living, LLC, Saint Simons Health Care, LLC, and Sharon Youngblood. The Court **DISMISSES AS MOOT** Count 3 of Plaintiff's Complaint (Dkt. 1).

**SO ORDERED** this 13th day of August, 2020.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE